Alex JOHN, Jr., Plaintiff-Appellant,

v.

STATE OF LOUISIANA (BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES, et al.), Defendants-Appellees.

No. 84–4524
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 15, 1985.

David T. Lopez, Houston, Tex., for plaintiff-appellant.

Bronfin, Heller, Feldman & Steinberg, Robert A. Kutcher, John D. Fricke, New Orleans, La., for defendants-appellees.

Before RUBIN, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

The district court granted the defendants-appellees' motion for summary judgment because (1) the plaintiff-appellant, by failing to follow a local rule that requires a response to all opposed motions, effectively agreed to the entry of summary judgment and, (2) at any rate, there are no genuine issues of material fact and the defendants-appellees are entitled to judgment as a matter of law. We must reverse the judgment because (1) a local rule cannot authorize summary judgment on a record that, under Rule 56, Fed.R.Civ.P., will not support it and (2) the record in this case will not support summary judgment.

## I.

## BACKGROUND

In July of 1980, Dr. Alex John, Jr. ("John"), a black male, was appointed Dean of University Relations at Northeast Louisiana University (the "University"). John was also a tenured assistant professor of psychology. John held the position of dean for a stormy eighteen-month period during which John frequently complained to the University president, Dr. Dwight Vines ("Vines"), that John had not been given responsibilities commensurate with his title, discussed his concerns with members of the Board of Trustees for State Colleges and Universities (the "Board"), and filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). On January 8, 1982, the Board approved Vines' recommendation to remove John from the position of Dean of University Relations and to assign to him only teaching responsibilities. In response, John commenced this action in the district court against the State of Louisiana, the Board, the University, and Vines, both individually and in his official capacity (collectively, the "defendants"). John alleges that he was fired from the position of dean without due process, that he was fired in retaliation for filing grievances with the Board and the EEOC, that Vines intentionally and maliciously defamed him, and that

he was given responsibilities and a salary inferior to other deans at the University simply because he is black. The complaint seeks (1) a preliminary injunction (a) reinstating John to the position of Dean of University Relations and (b) prohibiting the Board from eliminating that position; (2) a permanent injunction prohibiting defendants (a) from engaging in unlawful employment practices and (b) from terminating John's employment without due process; and (3) damages and attorney's fees under both Title VII and 42 U.S.C. § 1983. The defendants moved to dismiss John's Title VII claim because, at the time suit was filed, John had not received a right-to-sue letter from the EEOC. The State, the Board, the University, and Vines (in his official capacity) also moved to dismiss the complaint because, under the Eleventh Amendment, the court lacks subject matter jurisdiction of the claims against these parties.

Thereafter, the court held a two-day hearing on John's request for a preliminary injunction and on defendants' motions to dismiss. Following the hearing, the court dismissed the Title VII claim without prejudice because John had not received notice of his right to sue. The court retained jurisdiction, however, of the request for injunctive relief pending the outcome of the EEOC investigation. With respect to the section 1983 claim, the court held that the Eleventh Amendment does not bar preliminary injunctive relief against the Board and the University because the relief sought is prospective in nature. The court denied the request for preliminary injunctive relief, however, because John did not show (1) "a substantial likelihood that he will prevail on the merits" of either his due process claim or his Title VII claim; (2) irreparable injury; or (3) that the potential injury to John outweighed the burden of an injunction to the defendants. Finally, the court reserved decision on whether the Eleventh Amendment bars John's claims for damages.

After the EEOC issued a right-to-sue notice, John amended his complaint to reinstate the Title VII claim. On June 9, 1983,

the district court granted a motion to dismiss the section 1983 damages claims against the Board, the University, and Vines (in his official capacity) on the ground that these parties are "arms of the State" against whom, absent a waiver of sovereign immunity, suit is barred by the Eleventh Amendment. The court held, however, that the Eleventh Amendment does not bar John's claim for Title VII damages.

At this point in the litigation, claims for the following relief remained alive: (1) permanent injunctive relief against the University, the Board, and Vines; (2) damages for defamation against Vines in his individual capacity; and (3) Title VII damages against Vines, the Board, and the University. On December 15, 1983, a pretrial conference was held at which the court established a schedule for completing discovery and, perhaps as a result of an agreement among the parties, for submitting the case for resolution. Although the parties now disagree on the scope of the agreement reached at the pretrial conference, a pretrial minute entry states that (1) John will take the deposition of Board member Anthony Molina ("Molina") by January 10, 1984; (2) within thirty days of Molina's deposition, John will file a motion for summary judgment; and (3) defendants will respond to the motion within thirty days and, if they choose, file a cross-motion for summary judgment.

The schedule soon broke down. Molina was not deposed until January 23, 1984. Although the schedule called for John to file a motion for summary judgment within thirty days of Molina's deposition, John did not do so and, in fact, has never filed such a motion in this case. Instead, the parties and the court exchanged a series of letters and minute entries in which the method of disposing of the case was discussed. A January 20, 1984, minute entry states that, in the light of the schedule adopted at the pretrial conference, "the [January 30, 1984,] trial [setting] is continued without date, pending the court's decision on plaintiff's Motion for Summary Judgment and defendants' cross-motion."

Thereafter, the court gave the parties notice of a July 5, 1984, trial setting. In a letter to the court, counsel for defendants questioned whether the trial setting was necessary because the parties had agreed in December that, beyond Molina's deposition, there was no need to take additional evidence and that the case could be submitted to the court on the existing record, without a full trial. John's counsel responded in a letter of his own. He stated that, although summary judgment might be helpful to narrow the issues, the ultimate question of defendants' motivation could probably not be resolved without a trial and the receipt of additional evidence. In a subsequent letter to the court, defendants reiterated that the parties agreed in December of 1983 that no evidence beyond Molina's deposition and the testimony developed at the hearing on the request for preliminary injunctive relief would be presented. John responded, in turn, that while the parties agreed to submit motions for summary judgment, they recognized that, if summary resolution was not appropriate, additional evidence could be presented at trial. John indicated that, although there was no need to repeat the testimony presented at the preliminary injunction hearing, he desired to present additional evidence at a trial on the merits. John did not, however, mention specific evidence that he desired to present. Despite John's representations, the court removed the case from the trial docket. An April 5, 1984, minute entry states: "As the court decided at the last pretrial conference, this case is to be submitted by both parties on briefs, including suggested findings of fact and conclusions of law accompanied by the appropriate authorities."

On May 15, 1984, defendants filed a motion for summary judgment. The motion papers assert that Molina's deposition "poses no new substantive questions of fact which warrant this Court's consideration." Moreover, according to the motion, the record from the preliminary injunction hearing establishes that all defendants are entitled to judgment as a matter of law. The motion was set for argument on June 18, 1984. John's counsel received notice of the setting on a form which states that *"Judge Scott will hear oral argument in all cases."* (Emphasis in original.) The form also states, however, that the "time for briefing is governed by Local Rule 10(f) which is set out on the reverse side." The local rule provides that "[i]f the respondent opposes a motion, he shall file his response ..., brief, and such supporting documents as are then available, within ten days after service of the motion."

John did not respond to the motion in writing. Although a hearing was set for June 18, John's attorney was apparently informed that, on June 13, the court determined to grant the motion without hearing argument. On June 18, 1984, the court granted the motion. The court's findings state that "[a]t a pretrial conference concerning this matter held on December 15, 1983, the parties and the Court agreed that the matter could be tried on a summary judgment basis once plaintiff had taken the deposition of Mr. Anthony L. Molina." The court went on to conclude that the evidence from the preliminary injunction hearing "is uncontroverted and uncontested." Given the parties' agreement that Molina's testimony was the only additional evidence to be presented, summary judgment was proper, in the court's view, unless Molina's deposition raised a question of fact. The court did not, however, independently consider Molina's deposition. Said the court: "Because plaintiff has not responded to [the claims in defendants' motion for summary judgment that Molina's deposition does not raise a fact question], we now accept them as being true." Thus, since neither the preliminary injunction record nor Molina's deposition presented a question of fact, summary judgment was proper. The court also noted that, by failing to file a response to defendants' motion for summary judgment, John violated Local Rule 10(f). Said the court: "On that basis alone, defendant[s] may prevail on [their] motion...." The court adopted the violation of Local Rule 10(f) as an alternative ground for its holding. Thereafter, the

district court denied John's motion for a new trial. This appeal followed.

On appeal, John argues first that he did not agree to submit the case to the court on a limited record consisting of the evidence from the preliminary injunction hearing and Molina's deposition. Moreover, John argues, summary judgment was improper on that record because a substantial fact question exists with respect to the defendants' motivation in failing to give John responsibilities and salary commensurate with the position of dean and in ultimately removing him from that position. Generally, questions of motivation are peculiarly ill-suited to summary resolution. In addition, in John's view, the deposition of Molina and the evidence from the injunction hearing support an inference sufficient to preclude summary judgment that John's treatment at the University resulted from racial animus. Finally, John argues, the summary judgment cannot rest on the alternative ground that John violated a local rule by failing to respond to the motion. Under Rule 56, Fed.R.Civ.P., a response to a motion for summary judgment is not required unless the moving party carries the initial burden of demonstrating an absence of material questions of fact. In John's view, the defendants did not carry this initial burden. Although John did not file a written response, he opposed the summary judgment and, had he been given a chance, would have argued at the hearing originally scheduled for June 18 that defendants did not discharge their burden and were not entitled to judgment as a matter of law.

Defendants argue on appeal that, in December of 1983, the parties did in fact agree to submit the case for final resolution on the existing record as supplemented by Molina's deposition. At any rate, defendants argue, the propriety of resolving this case on cross-motions for summary judgment on the limited record before the district court is not at issue because John never filed a motion for summary judgment as contemplated by the December 1983 minute entry. To defendants, the issue in this case is simply whether the

record will support the summary judgment. John's arguments on appeal that Molina's deposition and the preliminary injunction record reveal a fact question are unavailing because of the axiom that a party may not oppose summary judgment on appeal with materials not presented to the district court. Moreover, Molina's deposition does not raise any fact question and the record as a whole conclusively shows that John was not discriminated against on account of his race. Therefore, according to defendants, summary judgment was entirely proper.

## II.

### ANALYSIS

#### 1. *Standard of Review*

At the outset, we must determine whether the proceedings in the district court are more properly characterized as summary judgment proceedings or as a trial on a stipulated record. As we discussed in *Vetter v. Frosch*, 599 F.2d 630 (5th Cir.1979), our standard of review depends on the answer to this question. If the proceedings are characterized as a trial on a stipulated record, the existence of fact questions will not undermine the result. Moreover, we will resolve all inferences from the record in favor of the district court's decision and will affirm unless the district court resolved fact questions in a clearly erroneous manner or misconstrued the law. *Id.* at 632. If, on the other hand, the district court granted a true summary judgment, the existence of properly raised questions of fact will require reversal. In addition, we will view the inferences from the record " 'in the light most favorable to the party opposing the motion.' " *Id.* at 631–32 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

It is not dispositive that defendants' motion and the district court's opinion are both styled in summary judgment terms. *Vetter*, 599 F.2d at 633 ("We think, then, we have for review a decision on a

stipulated record, albeit the matter was styled as a determination on motions for summary judgment."). Of course, in the vast majority of cases a summary judgment is a summary judgment. The difficulty in characterizing the posture of this case arises because both the parties and the district court have given us conflicting signals with respect to the scope of the agreement reached at the December 15, 1983, pretrial conference and the nature of the district court's decision in this case. We mention at the outset two points about which the parties are in apparent agreement. First, even if the parties did not agree to forego a full trial on the merits in lieu of resolution of the case on the record of the preliminary injunction hearing, it would not have been necessary to repeat the evidence presented at the hearing at a subsequent trial on the merits. Rule 65(a)(2), Fed.R.Civ.P., provides in part: "[A]ny evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." Second, absent an order of consolidation [1] or an agreement among the parties, the district court cannot itself determine to resolve the merits of the case on the record developed at the hearing on a request for preliminary injunctive relief. *See, e.g., Willits v. Richardson*, 497 F.2d 240, 244 (5th Cir.1974) (reversing dismissal of complaint following preliminary injunction hearing; "[c]ounsel for plaintiff declined to so stipulate [to a consolidated trial]"; "[t]he court entered no order of consolidation under Fed.R.Civ.P. 65(a)(2)");

*Nationwide Amusements, Inc. v. Nattin,* 452 F.2d 651, 652 (5th Cir.1971) (reversing dismissal on merits following preliminary injunction hearing; Rule 65(a)(2) "at least requires some form of notice to the parties that their final day in court has come"); *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.,* 463 F.2d 1055, 1057 (7th Cir.1972) ("parties should normally receive clear and unambiguous notice" of intent to consolidate trial on merits with hearing on application for preliminary injunction). In this and other contexts, however, the parties are certainly free to agree to submission of a case for final resolution on a limited or stipulated record. *See, e.g., Vetter,* 599 F.2d at 632 (trial on administrative record developed during Civil Service Commission proceedings); *Satellite Television & Associated Resources, Inc. v. Continental Cablevision,* 714 F.2d 351, 354 (4th Cir.1983) (trial on stipulated facts, exhibits, and affidavits), *cert. denied,* —— U.S. ——, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984); *Starsky v. Williams,* 512 F.2d 109, 111–12 (9th Cir.1975) (trial on record from disciplinary committee hearing). The district court did not order consolidation of the trial on the merits with the hearing on the request for a preliminary injunction.[2] Therefore, we must determine if the parties thereafter agreed to submission of the case for final resolution on the preliminary injunction record as supplemented by Molina's deposition.

■■■ The best evidence of the agreement reached at the pretrial conference is the December 15, 1983, minute entry.[3] Al-

---

**1.** Rule 65(a)(2) provides in part: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

**2.** In fact, the district court apparently contemplated that a trial on the merits would follow the hearing. The court noted that much of John's case was not well-developed at the preliminary injunction hearing:

As the plaintiff's main emphasis at the preliminary injunction hearing was his due process claim, the evidence presented was sparse

in relation to plaintiff's Title VII claim. From what was presented we find that plaintiff has not born[e] his burden at this stage of proving that he will most likely prevail at a later trial on the merits of his Title VII claims.

**3.** The minute entry states:

A pretrial conference in the above captioned case was held in open court in Alexandria, Louisiana on December 15, 1983. At this conference, the court directed that plaintiff proceed to take the deposition of Anthony Molina on or before January 10, 1984. Plaintiff was directed to file his proposed motion for summary judgment with a memorandum

though the minute entry is consistent with an agreement to file cross-motions for summary judgment, we cannot say that it necessarily reflects consent to trial on a stipulated record. The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record. *See Bricklayers, Masons & Plasterers International Union v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir.1975); *Hindes v. United States*, 326 F.2d 150, 152 (5th Cir.) ("The mere fact that both appellants and appellee moved for summary judgment does not warrant the grant of either motion if the record reflects a genuine issue of fact."), *cert. denied*, 377 U.S. 908, 84 S.Ct. 1168, 12 L.Ed.2d 178 (1964). Indeed, the contrary is likely to be true if the parties have moved for summary judgment "on different legal theories dependent on different constellations of material facts." *Bricklayers*, 512 F.2d at 1023. If a genuine issue of fact exists, the "filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion." *Schlytter v. Baker*, 580 F.2d 848, 849 (5th Cir.1978). "When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears." *Id.* At least one commentator has suggested that, in the latter situation, unless the parties expressly state to the contrary, the submission of cross-motions for summary judgment "is equivalent to [consent to] a stipulated trial on an agreed statement." Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 484 n. 92. The cases have generally not gone that far, *see, e.g., Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983) ("when both parties proceed on the same legal theory and rely on

the same material facts the court is signaled that the case is ripe for summary judgment") (citing *Bricklayers International*, 512 F.2d at 1017), and we need not decide the merits of that position. The most that can be said from the December 15, 1983, minute entry is that the parties apparently agreed to submit cross-motions for summary judgment. The minute entry in no way suggests that the motions will involve the same legal theories or the same material facts. Since the *filing* of cross-motions for summary judgment does not necessarily constitute an agreement to trial on a stipulated record, a mere *agreement* to file cross-motions, *a fortiori*, does not either. *Cf. Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir. 1976) ("cross-motions for summary judgment do not constitute an agreement that if one is rejected the other is warranted").

■ Moreover, developments subsequent to the December 15, 1983, minute entry, although not free from ambiguity, convince us that the parties did not agree to trial on a stipulated record or, if they did, that John repudiated the agreement and that the district court rendered a true summary judgment. The January 10, 1984, minute entry clearly implies that, notwithstanding the December 1983 agreement, a trial might be necessary:

> Because of the schedule adopted by the court during the pretrial conference of December 15, 1983, this matter will not be ready for trial on the previously scheduled date of January 30, 1984. Therefore, the trial is continued without date, pending the court's decision on plaintiff's Motion for Summary Judgment and defendants' cross-motion.

On the other hand, the April 5, 1984, minute entry implies that the December agreement foreclosed the possibility of a trial following submission of cross-motions for summary judgment:

---

within thirty days after the date of Molina's deposition. Thirty days after that, defendant is directed to file a memorandum on plaintiff's motion, and may file a cross-motion at this time. Plaintiff will have 30 days to re-

spond to defendant's cross-motion. Suggested findings of fact and conclusions of law are to be submitted by both parties within 20 days after the last motion is filed.

This case was reset on the new trial calendar in error. As the court decided at the last pretrial conference, this case is to be submitted by both parties on briefs, including suggested findings of fact and conclusions of law accompanied by the appropriate authorities.

This minute entry followed letters to the court from John's counsel in which he represented to the court that John desired to present additional evidence. A letter dated March 20, 1984, states: "I am definitely of the opinion that trial of this case cannot be avoided." A follow-up letter dated March 28, 1984, states: "[I]t is clear to me that there is considerable additional evidence which should be presented to the Court for disposition of the case on the merits.... I am increasingly convinced that the best, if not the only, manner in which this matter should be resolved on the merits is by a plenary trial to supplement the evidence already of record."

We do not believe that these citations to the record demonstrate that the parties agreed to trial on a stipulated record. At most, a liberal reading of the record indicates that, if the parties reached such an agreement, John changed his mind and informed the court of his desire to present additional evidence. Moreover, we are convinced that, although the district court's findings and conclusions are less than clear on this point, the district court rendered a true summary judgment, not a judgment on a stipulated record. First, we note that John did not file a motion for summary judgment; the case was decided on defend-

ants' motion alone. Second, although the court mentions the December 1983 agreement, the court couched its decision, not in terms of a *resolution* of fact questions, but in terms of the *absence* of fact questions. The district court's opinion refers to the findings from the preliminary injunction hearing. Those findings, however, expressly disclaim resolution of the merits of the Title VII claim. *See* note 2, *supra.* Moreover, the findings on the motion for summary judgment do not include specific fact findings on the Title VII claim. Thus, the district court's decision, if intended to resolve this case on a stipulated record, lacks the findings necessary to support judgment for the defendants. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2524 ("Findings are required in all actions tried upon facts without a jury."). Third, the court did not independently consider Molina's deposition, but instead relied on summary judgment techniques to avoid considering it. Finally, defendants argue on appeal not that the district court correctly decided the case on a stipulated record, but that the court properly determined that there are no genuine issues of material fact. Indeed, defendants argue that the scope of the December agreement is a "non-issue": "The District Court's judgment was based entirely upon defendants' motion for summary judgment filed in accordance with defendants' rights under Rule 56 of the Federal Rules of Civil Procedure." Appellees' Brief at 33. For these reasons, we think the district court's decision is more appropriately viewed as a true summary judgment.[4] We turn to an

---

4. In certain circumstances, it may be appropriate to review a decision that on its face purports to be a summary judgment under the more deferential standard applied to a judgment following a trial on a stipulated record. Review under the more deferential standard is only appropriate, however, when it appears that the parties intended to submit the case to the court for final resolution, not for summary judgment, and that the court in fact decided the case on that basis. *See, e.g., Vetter,* 599 F.2d at 632–33; *Nielsen v. Western Electric Co.,* 603 F.2d 741, 743 (8th Cir.1979) ("The record reflects that both parties treated the proceedings as a trial on the factual issues.... Plaintiff's counsel conceded at oral argument that he presented all available

evidence in support of his position."); *Starsky v. Williams,* 512 F.2d at 112 ("the parties had in fact agreed that all of the underlying material facts were those reflected by the written record"); *Allen v. United Mine Workers,* 726 F.2d 352, 353 (7th Cir.1984) ("When, as in this case, the trial court with the parties' acquiescence treats the hearing on cross-motions for summary judgment as the trial and enters (as it did) findings of fact and conclusions of law as required in a bench trial ..., its findings can be overturned on appeal only if they are clearly erroneous."); *Wilson v. Block,* 708 F.2d 735, 745 n. 7 (D.C.Cir.) ("We thus find that the plaintiffs agreed to the disposition of the claim on the written record."), *cert. denied,* —— U.S. ——, 104

analysis of the alternative grounds upon which the district court based the judgment.

#### 2. Violation of Local Rule 10(f)

The district court held that John's violation of Local Rule 10(f) was itself sufficient to support the summary judgment. John argues that, where the record cannot support summary judgment under Rule 56, violation of a local rule requiring a response to all opposed motions cannot itself justify a summary judgment. According to John, defendants did not carry their initial burden of demonstrating the absence of genuine issues of fact. Therefore, John argues, he was not obligated by Rule 56 to respond to defendants' motion with summary judgment proof of his own. If Local Rule 10(f) requires a response in these circumstances, and if violations of the rule are punished by the automatic grant of summary judgment, the local rule is inconsistent with Rule 56. Finally, John relied on the setting of an oral hearing at which, John argues, he would have pointed out to the district court the fact questions that remain on the face of the summary judgment record.

 Rule 83, Fed.R.Civ.P., gives each district court the authority to "make and amend rules governing its practice *not in-* *consistent with [the Federal Rules of Civil Procedure.]'* (Emphasis supplied.) Obviously, a local rule that is inconsistent on its face with the Federal Rules cannot stand. Moreover, although we normally defer to a district court's construction of its own rules, we are not obliged to accept a construction that renders a facially innocuous rule inconsistent with the Federal Rules. *See Woodham v. American Cystoscope Co.,* 335 F.2d 551, 556 (5th Cir.1964) (rejecting district court's construction of a local rule similar to Local Rule 10(f)). We note first that Local Rule 10(f)[5] does not explicitly provide a sanction for failing to file a response to an opposed motion. Nevertheless, the district court held that the failure to file a written response to a motion will result in the automatic grant of that motion, without regard to the merits or to the Federal Rules of Civil Procedure. We believe that such a construction of Local Rule 10(f) renders it inconsistent with Rule 56. Therefore, we reject the district court's construction.

 Rule 56(e) provides in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his

S.Ct. 171, 78 L.Ed.2d 330 (1983). If, on the other hand, it is not clear that the parties intended for the court to resolve, rather than to identify, questions of fact, the case must be treated as a true summary judgment. *See, e.g., Lac Courte Oreilles Band v. Voigt,* 700 F.2d 341, 349 (7th Cir.) ("the record suggests that the tribe did not stipulate to a trial based on the documents before the court"; "the tribe indicated that if summary judgment were not granted they would call expert witnesses at trial"), *cert. denied,* —— U.S. ——, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983); *Tony v. Bergland,* 645 F.2d 1063, 1066 (D.C.Cir.1981) ("the language of the district court's opinion and the papers of the parties indicate that a true summary judgment was intended"); *United States v. Fred A. Arnold, Inc.,* 573 F.2d 605, 607 (9th Cir.1978) ("neither party, explicitly or inferentially, stipulated to a court trial"); *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir.1976) (cross-motions for summary judgment following agreement to submit case on a stipulated record; "it appears that the parties in effect waived or abandoned the stipulation ... and elected to invoke sum-

mary judgment procedure"). We think this case falls into the latter category. Thus, we will treat the district court's decision as a true summary judgment.

5. Local Rule 10(f) states:

 If the respondent opposes a motion, he shall file his response, including opposing affidavits (if the motion is one for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure), brief, and such supporting documents as are then available, within ten days after service of the motion. Briefs shall contain a concise statement of reasons in opposition to the motion, and a citation of authorities upon which the respondent relies. For good cause appearing therefor, a respondent may be required to file his response and supporting documents, including briefs, within such shorter period of time as the Court may specify, or may be given additional time as provided in subsection (h) of this rule, to file the response, including documents and brief.

pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If he does not so respond, summary judgment, if appropriate, shall be entered against him.*

(Emphasis supplied.) It is absolutely clear, however, that Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges the initial burden of demonstrating that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. If the moving party fails to discharge this burden, summary judgment must be denied—even if the nonmoving party has not responded to the motion. *See, e.g., Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981) ("[t]he non-moving party is not required to respond unless and until the moving party has properly supported the motion with sufficient evidence"); *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.,* 479 F.2d 135, 138–39 (5th Cir. 1973) (same).

■ We do not question the power of district courts to adopt local rules requiring parties who oppose motions to file statements of opposition. *See Arundar v. De-Kalb County School Dist.,* 620 F.2d 493, 495 (5th Cir.1980) ("[w]e recognize and applaud the policy underlying" local rules similar to Local Rule 10(f)). We believe, however, that, where the motion at issue is for summary judgment, imposition of the ultimate sanction of automatically granting the motion upon failure to comply with the local rule is wholly inconsistent with Rule 56. The district court's construction of the rule, because it authorizes the entry of summary judgment on a record containing unresolved questions of material fact, alters the scheme of shifting burdens inherent in Rule 56. In *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210 (5th Cir. 1976), the district court granted defendant's motion to dismiss (which, because it was supported by matters outside of the pleadings, was converted into a motion for summary judgment) apparently on the sole ground that plaintiff failed to file an opposition to the motion. We vacated the judgment and remanded the case with directions to consider, without regard to plaintiff's failure to respond, whether defendant discharged its burden of demonstrating an absence of material fact questions. We said:

> [T]he District Court's grant of a partial summary judgment must be reversed. Although Rule 56(e) does not allow a party to "rest upon the mere allegations or denials of his pleading" when his adversary moves for summary judgment, the Rule does not relieve the movant of his duty to establish the absence of a genuine issue as to material facts. The moving party still has the initial burden, under Rule 56(c), of showing the absence of a genuine issue concerning any material fact, and of showing that judgment is warranted as a matter of law. In deciding whether to grant summary judgment, the District Court "must draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *United States Steel Corp. v. Darby,* 5 Cir., 1975, 516 F.2d 961, 963. In reviewing a District Court's grant of a summary judgment, the appellate court must employ the same standards. *Id.* Thus, *if the District Court entered partial summary judgment on the sole ground that the Employee failed to respond to Employer's motion to dismiss, then its grant of partial summary judgment was erroneous and must be reversed* .... If, on remand, the District Court decides that partial summary judgment is appropriate because Employer has met his burden of establishing that there are no genuine issues as to particular material facts, the Court is free to so decide but it should so state, and shall make an

order specifying the facts that appear to be without substantial controversy.

*Id.* at 213–14 (citations & footnote omitted; emphasis supplied).

The *Boazman* court apparently imposed the sanction of automatic summary judgment on its own, without the benefit of a local rule. The district court's reliance on a local rule, however, does not distinguish this case in any meaningful way from *Boazman.* In fact, in *Woodham,* 335 F.2d at 551, we expressly rejected a similar construction of a local rule nearly identical to Local Rule 10(f). In *Woodham,* defendant submitted a 12(b) motion to dismiss for want of jurisdiction. Plaintiff did not file a response within ten days as required by a local rule. The district court automatically granted the motion, without regard to its merits, solely on the ground that "[n]o response ... has been filed by plaintiff in accordance with Local Rule 21(a)." *Id.* at 553. Local Rule 21(a), like Local Rule 10(f), did not expressly provide for dismissal or other sanctions for noncompliance. We rejected the district court's decision to read such a sanction into the rule. Moreover, we held that the district court's construction rendered the rule inconsistent with the general admonition of Rule 1, Fed. R.Civ.P., that rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." We construed the local rule to empower the district court to decide an unopposed motion "on the papers before him," but not to relieve the court of the obligation to consider both the "record and briefs." *Id.* at 556–57.

Moreover, in *Ramsey v. Signal Delivery Service, Inc.,* 631 F.2d 1210 (5th Cir.1980), we reversed the district court's judgment granting a Rule 12(b)(6) motion to dismiss. Plaintiff did not respond to the motion within the time prescribed by a local rule that provided that "[f]ailure to file a response shall indicate that there is no opposition to the motion." *Id.* at 1214. We held that noncompliance with the local rule was not a sufficient basis for granting the motion. Because the motion sought a dis-

missal with prejudice, automatically granting it because of a single failure to comply with a local rule would conflict with the established principle that an involuntary dismissal for want of prosecution is only appropriate on a "clear record of delay or contumacious conduct." *Id.* See also *Arundar,* 620 F.2d at 493 (dismissal with prejudice is too harsh a sanction for failure to comply with local rule requiring response to opposed motion). *Cf. Blois v. Friday,* 612 F.2d 938 (5th Cir.1980) (reversing district court's refusal to vacate "default summary judgment").

Thus, it is clear that, although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation. In the light of Rule 56's clear command that a party need not respond to a motion for summary judgment unless the moving party discharges its initial burden, the reasoning of these cases applies with even greater force to the automatic grant of motions for summary judgment. We hold, therefore, that the summary judgment cannot be supported solely on the ground that John failed to respond to defendants' motion for summary judgment. *See Hamilton v. Keystone Tankship Corp.,* 539 F.2d 684, 686 n. 1 (9th Cir.1976) (dictum) ("it is highly questionable in light of the standards of Rule 56 that a local rule can mandate the granting of summary judgment for the movant based on a failure to file opposing papers where the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact"); *Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620, 625 (9th Cir.1977) (dictum) ("again we caution that it is highly questionable whether the district court can mandate the entry of summary judgment solely on the failure of the adverse party to file opposing papers"); *Wang v. Lake Maxinhall Estates, Inc.,* 531 F.2d 832, 835 n. 10 (7th Cir.1976) (Stevens, J.) (construing local rule to impose, as sanc-

tion for failure to respond to motion for summary judgment, "the court's acceptance as true of the facts set forth in the defendants' affidavits and answers to interrogatories"); *McDermott v. Lehman*, 594 F.Supp. 1315, 1320–21 (D.Me.1984) (construing local rule not to require automatic grant of summary judgment upon failure of nonmovant to file written response; rather, nonmovant simply loses right to contest movant's statement of material facts that another local rule requires movant to file). *Cf. Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 930–32 (1st Cir.1983) (suggesting adoption of local rule requiring movant to file a statement of material facts upon which he relies, to be controverted by nonmovant; failure to controvert will result in facts being deemed admitted). Accordingly, we must consider the alternative ground upon which the judgment is based—the absence of material questions of fact.

### 3. *The Summary Judgment Record*

John argues that there is an unresolved question of material fact on the face of the record in this case: Did defendants assign demeaning responsibilities to the position of Dean of University Relations and ultimately remove John from that position because of racial animus or for legitimate, nondiscriminatory reasons? To underscore the existence of this question of fact, John relies in part on Molina's deposition. The district court, however, did not independently evaluate the deposition. Rather, in its alternative holding, the court based summary judgment on the "uncontroverted and uncontested" evidence from the preliminary injunction hearing and on defendants' assertion, which John did not controvert in the district court, that Molina's deposition "poses no new substantive questions of fact." The court held that, because John failed to controvert defendants' assertion that Molina's deposition does not raise questions of fact, the assertion must be taken as true and, in effect, that the deposition need not be considered. Thus, there are two aspects to the district court's deci-

sion that defendants are entitled to judgment as a matter of law: (1) the "uncontested" facts adduced at the preliminary injunction hearing do not entitle John to relief and (2) Molina's deposition creates no genuine issue of fact the resolution of which would entitle John to relief.

As an initial matter, defendants argue that, by failing to point out factual disputes in the district court, John is precluded from arguing on appeal that summary judgment was improper. According to defendants, "materials not presented to a District Court for consideration of a motion for summary judgment are never properly before the reviewing court on appeal from the judgment granting the motion." Appellee's Brief at 21. Moreover, defendants argue, "[i]t has been long recognized ... that a party cannot be silent in his opposition to a motion for summary judgment then oppose that motion on appeal." *Id.* at 22.

We are not convinced by these arguments that the summary judgment in this case must be affirmed. If defendants are asserting that John's failure to respond to their motion justified the automatic grant of summary judgment, the argument is duplicative of the claims considered in Part II(2), *supra.* A district court may not automatically grant summary judgment simply because the nonmovant fails to respond. *Boazman*, 537 F.2d at 213–14.

▮ If defendants are asserting that the nonmovant cannot attack summary judgment on appeal by raising distinct issues that were not before the district court or by introducing new materials into the record on appeal, we heartily agree. Most of the cases cited by defendants make precisely this point. In *Munoz v. International Alliance of Theatrical Stage Employees*, 563 F.2d 205 (5th Cir.1977), for example, the parties attempted to "buttress a poorly constructed record" by appending "exhibits" to their appellate briefs. We said: "These 'exhibits', for the most part, were not properly before the district court when the motion for summary judgment

came on for hearing and will not be considered here." *Id.* at 209. In *Volkswagen of America, Inc. v. Robertson,* 713 F.2d 1151, 1162 (5th Cir.1983), we held that a party who resisted summary judgment in the district court on the ground that the flood at issue in the case was caused by the closing of a culvert-gate rather than by poor drainage on its property, could not attack the summary judgment for the first time on appeal with the claim that the flood had in fact been caused by an act of God. *See also Auto Drive-Away Co. v. ICC,* 360 F.2d 446 (5th Cir.1966) (objection to admissibility of affidavits supporting summary judgment for first time on appeal came too late); *Garcia v. American Marine Corp.,* 432 F.2d 6, 8 (5th Cir.1970) ("this court may not therefore, reverse [summary judgment] on the basis of facts not in the record").

With respect to John's Title VII claim, defendants sought summary judgment in the district court on the ground that the evidence from the preliminary injunction hearing demonstrated that defendants' treatment of John was not "discriminatorily motivated." Clearly, John is not asserting a new issue on appeal that was not before the district court; John is simply arguing that there is evidence in the record that defendants' actions were "discriminatorily motivated." Moreover, John has made no attempt to supplement the record on appeal with materials that were not a part of the record in the district court. He is simply relying on Molina's deposition and the testimonial and documentary evidence presented at the preliminary injunction hearing.

Defendants' claim has merit, therefore, only if, by failing to draw the district court's attention to specific evidence that is both in the record before the district court and relevant to the precise issue raised by the motion for summary judgment, the nonmovant loses the right to use that evidence on appeal to attack the summary judgment. At least where the record is not voluminous, we have held to the contrary. In *Higgenbotham v. Ochsner Foundation Hospital,* 607 F.2d 653 (5th Cir.1979), we held that, on a motion for summary judgment, the district court must consider the *record as a whole,* not simply those portions of the record relied upon by the moving party or specifically pointed out in opposition to the motion by the nonmoving party. In *Higgenbotham,* we reversed a summary judgment for defendant in a medical malpractice suit. Defendant moved for summary judgment on the ground that, although plaintiff alleged an injury occurring on February 15, the injury actually occurred on February 13, thus rendering suit filed the following February 15 untimely pursuant to the Louisiana one-year prescriptive period. The motion was supported with medical records that arguably indicated that the injury occurred on February 13. The plaintiff responded with a memorandum in opposition to the motion for summary judgment that apparently simply reiterated the complaint's allegation that the injury occurred on February 15. The plaintiff did not draw the court's attention to portions of her deposition in which she testified, contrary to the conclusions drawn by the defendant from the medical records, that the injury occurred on February 15. We held that there was a material question of fact with respect to the date upon which the injury occurred. Moreover, we reversed the judgment notwithstanding plaintiff's failure to point out in the district court those portions of the record that refuted defendants' showing and created the triable question of fact. We said:

> It is bootless to contend, as defendants did on oral argument, that, although the deposition was filed in the record, it could properly be ignored by the judge in ruling on the motion for summary judgment because plaintiff's counsel did not in some manner bring it directly to the judge's attention.
>
> . . . .
>
> [Rule 56(c)] does not distinguish between depositions merely filed and those singled out by counsel for special attention. Nor is this a case where the deposition that created the dispute was a needle in a paper haystack; the docket sheet

shows that only five depositions were filed.

*Id.* at 656–57 (footnote omitted). *See also Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980) ("[A] court can only enter a summary judgment if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists. Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention—the court must consider both before granting a summary judgment.") (emphasis in original; footnote omitted).

In *Nicholas Acoustics & Specialty Co. v. H & M Construction Co.*, 695 F.2d 839 (5th Cir.1983), however, we noted a possible conflict between *Higgenbotham* and *Keiser* and another line of cases, upon which defendants rely, that suggests that a court considering a motion for summary judgment is not bound independently to review the record for fact questions and that, " '[a]bsent extraordinary circumstances, we should not reverse a grant of summary judgment based on the presence of a factual issue that was not in some way brought to the attention of the district court.' " *Id.* at 846 (quoting *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1033 n. 7 (5th Cir.1982)). We noted that *Impossible Electronics* and *Franz Chemical Corp. v. Philadelphia Quartz Co.*, 594 F.2d 146, 150 (5th Cir.1979), could be interpreted to hold that "support already in the record for the position that an issue is actually … in dispute" could not be utilized on appeal to challenge a summary judgment unless it was specifically brought to the district court's attention. *Nicholas Acoustics*, 695 F.2d at 846 n. 7. We refused, however, to reconcile the apparent conflict or to choose between the two lines of cases. We held that, since we had reviewed the record on appeal and discovered evidence that created an issue of fact, we could not ignore it even though the parties did not point the evidence out and the district court had not considered it.

Again, we need not attempt to reconcile the apparent conflict or make a choice between conflicting rules, if indeed there is a conflict at all. In this case, the very evidence cited by defendants in their motion for summary judgment reveals a question of fact. Thus, it is of no avail for defendants to argue that John is precluded from relying on evidence in the record that raises a question of fact because defendants themselves drew the district court's attention to the evidence upon which John relies. If the district court considered the motion for summary judgment on its merits, as it claims to have done, the court necessarily considered the evidence upon which John now relies. Defendants supported the motion for summary judgment with a blanket reference to the testimony from the preliminary injunction hearing followed by the conclusory claim that the evidence left no material questions of fact unanswered.

Moreover, defendants specifically drew the court's attention to Molina's deposition. The district court apparently treated the question whether Molina's deposition raises fact questions as itself a fact question that, because of defendants' assertions and John's failure to respond to them, was established for summary judgment purposes. This mode of analysis cannot withstand scrutiny. The existence of material questions of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2720 ("[T]he determination whether a genuine issue concerning a material fact exists is itself a question of law that must be decided by the court. It does not depend upon what either or both of the parties may have thought about the matter."). Thus, because the evidence upon which John relies was considered by the district court, we too are free to consider it notwithstanding John's failure to point out in the district court the manner in which the evidence supports his position. Any conflict between *Higgenbotham* and *Impossible Elec-*

*tronics* is illusory when the evidence upon which the moving party relies on its face raises genuine issues of fact. *See Stepanischen,* 722 F.2d at 930.

■ Although, if this case had in fact been submitted on a stipulated record, we might be unable to overturn a finding that John was not discriminated against on account of his race, we believe that there is sufficient evidence in the record to preclude the grant of summary judgment with respect to John's Title VII claim. The district court characterized the preliminary injunction evidence as "uncontroverted and uncontested." We disagree. The evidence in support of John's position can be summarized as follows. John worked for a number of years as assistant to the Vice-President for Student Affairs. He received consistently high job performance ratings in that position. Although he communicated his desire for advancement to his superiors, John was told by the vice-president that he could never be promoted to fill the vacancy upon the vice-president's retirement because the University community could not tolerate a black vice-president. After the vice-president retired, the Department of Student Affairs was reorganized and an attempt was made to find John a new administrative position. Vines told John that he could not become a dean because the University community also could not tolerate a black dean. Over Vines' initial objection, the Board nonetheless appointed John to the position of Dean of University Relations. The Board made it clear in executive session that Vines should assign to John a salary and responsibilities commensurate with that of other deans at the University. Vines did not fulfill this directive. In fact, John received the lowest salary of any dean at the University. Moreover, the Office of University Relations was placed at the bottom of the University organizational chart and was not assigned responsibilities commensurate with the office of dean. For example, the office did not have direct line responsibility over a single department of the University. Although John complained to Vines about the lack of responsibility assigned to his office, John continued to perform his duties well. Thereafter, Vines removed John from the position of Dean of University Relations for discriminatory reasons. This is demonstrated by a letter Vines sent to the Board in which he falsely accused John of inciting racial unrest among black students. The Board approved Vines' decision to return John to a teaching-only position.

To be sure, there is substantial evidence in the record that directly contradicts the evidence summarized above. Indeed, the evidence in support of John's case comes primarily from John's own testimony. Molina's deposition, however, corroborates some of the important aspects of John's testimony from the preliminary injunction hearing. Molina, a member of the Board, testified that, when the Board appointed John to the position of Dean of University Relations, the Board intended for the position to have responsibilities and salary commensurate with that of other deanships at the University: "[T]he Board as a whole indicated that we wanted Dr. [John] to have a Deanship with, you know, not just in name only but with the responsibilities and duties and salary and everything commensurate with a deanship position." Moreover, Molina testified that Vines told him that Vines was reluctant to agree to the appointment of John to the position of dean because "it would be very difficult for the other white administrators and faculty to accept a black Dean."

■ We must, of course, resolve the inferences from the record in favor of John. *See, e.g., Hodges v. Exxon Corp.,* 727 F.2d 450, 452 (5th Cir.1984). Based on the evidence presented at the preliminary injunction hearing and on Molina's deposition, we are convinced that genuine issues of fact exist with respect to the quality of John's performance as Dean of University Relations, defendants' motivation in assigning responsibilities and salary to John, and the reasons motivating John's termination as dean. Therefore, the summary judgment must be reversed.

**714**

### III.

### CONCLUSION

For the reasons set forth above, the summary judgment is reversed and the case is remanded for proceedings consistent with this opinion. Defendants shall bear the costs of this appeal.

REVERSED and REMANDED.