**Lorine DANIELS Plaintiff,**

v.

**BASF CORPORATION Defendant.**

**No. G–02–683.**

United States District Court,
S.D. Texas,
Galveston Division.

May 16, 2003.

Ronald Eugene Reynolds, Brown Brown et al., Houston, TX, for Lorine Daniels, plaintiff.

Maria Wyckoff Boyce, Baker & Botts, Houston, TX, for BASF Corporation, defendant.

### ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

On September 23, 2002, Plaintiff Lorine Daniels ("Plaintiff" or "Daniels") filed this lawsuit against Defendant BASF Corporation ("BASF") alleging that BASF harassed her and discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1967 and 42

U.S.C. § 1981. On April 4, 2003, BASF filed a Motion for Summary Judgment. Plaintiff's Response was due on April 24, 2003,[1] but no Response was filed. Soon after the Response deadline, the Court's case manager, as a courtesy, called Plaintiff's Counsel to inquire about the late Response. Plaintiff's Counsel did not return the case manager's phone call. The case manager made several more phone calls to Plaintiff's Counsel during the weeks after the deadline, finally reaching someone in Counsel's office who informed her that the Response would be filed the next day. The Response was not filed the next day. Now, *three weeks* after the deadline, the Court still has not received a Response. Accordingly, the Court treats Defendant's Motion as unopposed.[2] For the reasons articulated below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** the case **WITH PREJUDICE.**

## I. Factual Background

The record reveals the following facts. Daniels began working at BASF's Freeport, Texas facility in 1985. She was hired as a Production Clerk and received various promotions, eventually joining the Technical and Engineering Services ("TES") Department, where she remains today. Daniels's performance was generally satisfactory, but began to decline in 1999.

In June of 1999, Thomas Braun took over as TES Director. To achieve his goals of improving communication in the Department, promoting teamwork, and projecting a friendly image, Braun held meetings for a few minutes every Monday morning with the four employees (including Daniels) who reported directly to him. Daniels refused to participate in the meet-

ings, often standing in the doorway with her arms crossed, and responding, "No comment," when asked questions.

Daniels also refused to follow direct instructions from Braun. For example, one of Daniels's primary responsibilities was answering Braun's telephone, but *callers* complained to Braun that most of his calls went to voice mail. To rectify this problem, Braun asked Daniels to have someone cover for her when she needed to be away from her desk for any length of time. Braun also received a complaint from the Senior Vice President of Engineering, who called numerous times weekly, that Daniels asked for his phone number every time he called, despite her ready access to a company directory with his phone number. In response, Braun requested that Daniels not ask frequent callers and internal callers for their phone numbers. Daniels disagreed with these instructions-she thought they were unnecessary, and she resented the fact that other TES associates were not given the same instructions. In response, she took the instructions to the extreme, complaining that she needed to leave her desk to go to the restroom and *never* asking callers for their telephone numbers.

Daniels exhibited resistance to Braun's instructions in still other areas. Braun requested that Daniels and another TES employee, Bobbie Jo Stieg ("Stieg"), cross train so that one could cover for the other during vacations and other absences. Daniels resisted, complaining that cross training would take too much time. Braun also requested that Daniels write a memo identifying her "time wasters" because he thought Daniels took too long to complete certain tasks. She took over a month to

---

1. *See* S.D. Tex. Local Rule 7.3 ("Opposed motions will be submitted to the judge twenty days from filing ....").

2. *See* S.D. Tex. Local Rule 7.4 ("Failure to respond will be taken as a representation of no opposition.").

write the memo, which identified Braun's "vague and incomplete" instructions as the reason for her general tardiness. Finally, Braun asked Daniels to study and learn a new software program used by BASF. Plaintiff did not complete the training because she thought it was beyond the scope of her job duties.

Daniels's problems with teamwork, cooperation, leadership, and communication were reflected in her 1999, 2000, and 2001 performance evaluations. In 1999, she received an overall rating of "good," but Braun noted that Daniels needed to work on teamwork and communication. In 2000, Daniels received an overall rating of "meets requirements,"[3] though Braun again commented that Daniels needed to work on her negative attitude toward teamwork. Finally, in 2001, Daniels's overall rating was "partially meets requirements." Braun reiterated Daniels's need to improve her computer skills, to follow his instructions regarding answering the telephone, to treat people respectfully, to participate in Monday morning meetings, and to attend to her core responsibilities. Daniels expressed disagreement with the negative aspects of all of her evaluations.

In October of 2001, Daniels contacted BASF's Human Resources Department and complained that Braun was harassing her and discriminating against her. This was the first time Daniels complained to BASF about Braun. Daniels discussed her evaluations, Braun's request that she and Stieg cross train, the Monday morning meetings, and Braun's telephone instructions as examples of Braun's mistreatment of her. She alleged that this mistreatment was racially motivated, but could give only one reason for believing this: shortly after Braun became TES Director, he was attempting to operate a new pager and

asked, "Did this come from South Africa?" In her deposition, Daniels could not explain what made the comment a racial slur, and Braun denies making the comment.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id., 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id., 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Cas. Co., 799 F.Supp. 691, 694 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable in-

---

**3.** In 2000, BASF's rating scale changed: "meets requirements" is the middle rating, and the rating received by most of the Freeport site employees.

ferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

■■■■ Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). Ordinarily, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party, *see Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56, but Daniels has not submitted any evidence. As noted, Plaintiff has not filed a Response to Defendant's Motion, despite the fact that the deadline passed three weeks ago and despite numerous phone calls from the Court's case manager reminding Plaintiff's Counsel of the tardiness. The Court treats this failure to respond as a statement of non-opposition. *See* S.D. Tex. Local Rule 7.4 ("Failure to respond will be taken as a representation of no opposition."). Although it is reversible error for the Court to grant a summary judgment motion simply because the nonmovant fails to respond, *see John v. Louisiana Bd. of Trs. for State Colls. & Univs.,* 757 F.2d 698, 707–08 (5th Cir.1985), the Court may decide the merits of the case based on the Defendant's Motion and supporting evidence since Plaintiff has proffered no controverting evidence. *See Eversley v. MBank Dallas,* 843 F.2d 172, 173–74 (5th

Cir.1988) (noting that when the nonmovant submits no summary judgment response, the district court may accept as undisputed the facts in the motion for summary judgment).

### B. Alleged Discriminatory Actions

Daniels alleges that Braun discriminated against her in five ways: (1) on March 6, 2001, Braun raised his voice and talked to Daniels in a different tone than he talked to Stieg regarding the cross training; (2) during a Monday morning meeting on March 26, 2001, Braun failed to commend Daniels for her hard work on a project; (3) on September 10, 2001, Daniels told Braun that she was having trouble finding him a hotel room, and Braun raised his voice and told her she needed to find one; (4) on October 11, 2001, Braun gave Daniels instructions regarding how to answer the telephone, but he did not give these instructions to other employees; and (5) Daniels disagrees with the negative portions of her 1999, 2000, and 2001 performance evaluations. The Court will also address Braun's alleged "South Africa" comment.

#### 1. Discrimination Under Title VII [4]

■■■■ Under Title VII, the plaintiff must first establish a prima facie case of discrimination. *See Lawrence v. Univ. of Tex. Med. Branch,* 163 F.3d 309, 312 (5th Cir.1999). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* If the defendant articulates such a reason, the inference of discrimination created by the plaintiff's prima facie showing disappears, and the burden returns to the plaintiff to establish that the legitimate reasons offered by the

---

**4.** Racial discrimination claims brought under 42 U.S.C. § 1981 are analyzed under the same evidentiary framework as Title VII employment discrimination claims. *See LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996).

defendant were not the true reasons, but were instead pretexts for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

### a. Performance Evaluations

 To state a prima facie case, Daniels must show, among other things,[5] that she suffered an "adverse employment action." *See Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir.2001). Not every decision made by an employer is an employment action within the meaning of Title VII. *See Bennett v. Total Minatome Corp.,* 138 F.3d 1053, 1060 n. 10 (5th Cir.1998); *Messer v. Meno,* 130 F.3d 130, 140 (5th Cir.1997). As a matter of law, a negative employment evaluation, even if inaccurate, is not an adverse employment action. *See Douglas v. DynMcDermott Petroleum Operations Co.,* 144 F.3d 364, 373 n. 11 (5th Cir.1998) (concluding that a low performance evaluation is not an adverse employment action); *Martin v. Kroger Co.,* 65 F.Supp.2d 516, 535–36 (S.D.Tex.1999) (stating that "negative performance evaluations, even if undeserved, are not adverse employment actions giving rise to actionable discrimination claims"). Thus, Daniels's claims based on her performance evaluations fail as a matter of law. But even if a performance evaluation could constitute a negative employment action, Braun has articulated ample and compelling legitimate, nondiscriminatory reasons for Daniels's evaluations, namely her attitude and performance. Daniels's disagreement with Braun's evaluations of her performance is not evidence that Braun's performance-based reasons for Daniels's somewhat low scores were pretextual. *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir.2002), *petition for cert. filed,* 71 U.S.L.W. 3522 (U.S. Jan. 27, 2003) (No. 02–1121) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact."); *Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir.1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason."). Daniels has not refuted Braun's assessment of her performance; in fact, Daniels's deposition testimony supports Braun's depiction of her performance. Thus, even if a negative performance evaluation were an adverse employment decision, which it is not, Daniels's claims based upon her evaluations must fail because she has not demonstrated that Braun's stated reasons for Daniels's low marks were pretextual.[6] Therefore, Daniels's claims based on her performance evaluations must fail as a matter of law.

### b. Comparison to Another Employee

 Daniels alleges that Braun treated her differently from the way he treated Stieg, and she claims this different treatment constitutes discrimination. To create a fact issue on this allegation, Daniels must show that Braun treated Daniels and Stieg differently in "nearly identical" circumstances. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir.2001). But Daniels cannot do this because the two women were never in nearly identical circumstances: the two

---

**5.** "To establish a prima facie case of racial discrimination, a plaintiff must show that: (1) he belongs to a protected group; (2) he was qualified for the position held or sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or he was treated less favorably than others similarly situated or otherwise show that he was subjected to adverse treatment due to his race." *Edwards v. Galveston–Tex. City Pilots,* 203 F.Supp.2d 759, 769 (S.D.Tex.2002) (Kent, J.).

**6.** The Court questions whether Daniels's evaluations-especially the 1999 and 2000 evaluations-were, in fact, negative.

women did not perform the same functions and there is no evidence that Stieg exhibited the same performance problems as Daniels. Thus, any difference in the way Braun treated Stieg and Daniels is irrelevant. *See Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221 (5th Cir.2001), *cert. denied,* 535 U.S. 1078, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002) ("[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer ...."). Thus, any comparison between Stieg and Daniels is irrelevant to Daniels's race discrimination claim.

### c. Other Alleged Discrimination

 Just as a poor performance evaluation is not an adverse employment action, neither are the other four instances Daniels lists as constituting discrimination. Title VII was enacted to address "ultimate employment decisions," such as hiring and firing. *Bennett,* 138 F.3d at 1060 n. 10 (quoting *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997)). Braun's raising his voice, being rude, hurting Daniels's feelings, and giving her instructions she did not like are not adverse employment decisions. *See, e.g., Messer,* 130 F.3d at 140 (criticizing an employee and failing to listen to her input are not adverse employment decisions). In addition, Daniels fails to connect these incidents to her race. Daniels's subjective belief that Braun's actions were motivated by Daniels's race does not create a fact issue to overcome summary judgment. *See Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992). Thus, Daniels's discrimination claims based on these four instances fail.

### d. South Africa Comment

 For Braun's alleged question, "Did this [pager] come from South Afri-

ca?" to be evidence of discrimination, Daniels must show that the comment (1) is related to race, (2) was proximate in time to the complained-of adverse employment decision, and (3) was related to the decision. *See Patel v. Midland Mem'l Hosp. & Med. Ctr.,* 298 F.3d 333, 343–44 (5th Cir.2002), *cert. denied,* 537 U.S. 1108, 123 S.Ct. 885, 154 L.Ed.2d 780 (2003). The Court notes that Daniels has failed to articulate any adverse employment decisions, but will assume, for the sake of argument, that the negative employment evaluations were adverse employment decisions.

In her deposition, Daniels could not articulate why Braun's alleged comment was a racial slur. *See Wallace,* 271 F.3d at 224 (calling a pregnant woman stupid was not evidence of discrimination because it did not relate to her protected class). Daniels's subjective interpretation that it was is not enough. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (stating that, to be actionable, a comment "must be both objectively and subjectively offensive"). And even if the comment were a racial slur, it occurred more than six months before Braun's first evaluation of Daniels's performance and more than two years before her first below average evaluation. *See, e.g., Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 405–06 (5th Cir.2001) (finding that a racial comment made nearly a year before the alleged adverse employment decision was a "stray remark"). Thus, Daniels has not shown that Braun's alleged comment was racial, nor has she shown that the comment was related to any action Braun took regarding Daniels. Mere conjecture will not withstand summary judgment.

### 2. Harassment Under Title VII

 Daniels also claims that Braun harassed her in violation of Title VII.

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). Under Title VII, only harassment motivated by racial animus (or animus toward another protected class) is actionable. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace ...."). Daniels appears to base her harassment claim on the same five actions listed above, which, as the Court noted, are not facially racial, and which Daniels has not linked to her race. Title VII is not a "general civility code," *id.* at 81, 118 S.Ct. at 1002, and, though Daniels found these five incidents unpleasant, the Court determines that they are nothing more than "the ordinary tribulations of the workplace," *see Faragher*, 524 U.S. at 788, 118 S.Ct. at 2285, and are not actionable.

### III. Conclusion

For all of the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES WITH PREJUDICE** each and every one of Plaintiff's claims against Defendant. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**