Michael Bruce THORNHILL,
et. al., Plaintiffs,

v.

Marvin E. BREAZEALE,
et. al., Defendants.

No. Civ.A. 2:99–CV–35PG.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Feb. 10, 2000.

J. Andrew Phelps, J. Andrew Phelps, Attorney, Hattiesburg, MS, Mark Randall Holmes, Robison & Harbour, McComb, MS, John D. Smallwood, Glenn L. White, Holmes & White, PLLC, Petal, MS, Searcy L. Simpson, Jr., Searcy L. Simpson, Jr., Attorney, Dallas, TX, Gerald F. Meek, the Law Offices of Skip Simpson, P.C., Dallas, TX, for Michael Bruce Thornhill, Individually and on Behalf of All Wrongful Death Beneficiaries of William Bruce Thornhill, plaintiff.

John (Jack) W. Land, Sandra Schuffert Mohler, Bryan, Nelson, Randolph and Weathers, Hattiesburg, MS, W.J. Gamble, III, W.J. Gamble III, Attorney, Purvis, MS, for Marvin E. Breazeale, Individually and in His Official Capacity as Sheriff of Lamar County, MS, defendant.

W.J. Gamble, III, W.J. Gamble II, Purvis, MS, for Lamar County, Mississippi, U.S. Fidelity & Guar. Ins. Co., defendants.

### MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

Before the Court is Defendants' Motions for Summary Judgment. Having considered this motion, the responses, the briefs of counsel, the cited authorities and applicable law, this Court finds as follows:

### FACTUAL BACKGROUND

This cause of action arises from the events surrounding the suicide of William Thornhill, a pre-trial detainee in the custody of the Sheriff's Department of Lamar County, Mississippi. As this cause of action presents constitutional questions, this Court has jurisdiction over this matter. 28 U.S.C. § 1331. Plaintiffs have brought this action, alleging constitutional violations and negligence, against Sheriff Marvin Breazeale, Deputy Theresa Perry, and an unnamed Deputy in their individual and official capacities, as well as Lamar County, Mississippi and its insurer. Defendants have filed the instant motion addressing the sufficiency of Plaintiffs' constitutional claims and qualified immunity. The parties have conducted discovery limited to the qualified immunity issue. Since this is a motion for summary judgment, this Court views the disputed facts in a light most favorable to Plaintiffs.

On November 20, 1997, Mr. Thornhill was detained in the Lamar County jail to await trial on charges of raping his estranged wife. Sheriff Breazeale knew Mr. Thornhill and was aware of his troubled mental history. Sheriff Breazeale was also aware that Mr. Thornhill threatened suicide on two prior occasions. Sheriff Breazeale told Deputy Perry of Mr. Thornhill's suicidal tendencies. Accordingly, the Sheriff placed Mr. Thornhill in the Lamar County Jail's mental holding

cell where he was isolated from other inmates. Mr. Thornhill was also placed on suicide watch. According to an unwritten policy, a detainee under suicide watch is to be checked approximately every fifteen minutes. Items with which Mr. Thornhill could injure himself, such as his shoes and belt, were taken from him. His shoes were placed near a television out of reach from the mental holding cell. Mr. Thornhill received visitors and talked with the jail staff without incident for the next three days. Mr. Thornhill was never referred to a mental health professional.

On or before November 24, 1997, Mr. Thornhill was moved from the mental holding cell to a juvenile cell in the same section of the jail. The juvenile cell was equipped with a toilet and a shower including a non-break away shower rod. Sheriff Breazeale moved Mr. Thornhill to the juvenile cell so that Mr. Thornhill could take a shower and be more comfortable. He continued to be on suicide watch. Deposition testimony indicates that both Sheriff Breazeale and Deputy Perry knew that a person under suicide watch was not to be provided with any item with which the detainee could injure himself. On the morning of November 24, 1997, Deputy Perry gave Mr. Thornhill his shoes and allowed him to leave his cell to exercise and watch television. Deputy Perry returned Mr. Thornhill to his cell but forgot to remove his shoes. Later that day, Mr. Thornhill hung himself with his shoelaces from the non-break away shower rod in the juvenile cell. According to deposition testimony, Mr. Thornhill was observed alive approximately ten minutes before he was discovered hanging in his cell.

After Mr. Thornhill was found hanging, it took a period of time for the jailers to open the cell. This period of time is in dispute but is presumably several minutes. Mr. Thornhill was cut down and checked for vital signs. Since no vital signs were found, no one present attempted to resuscitate him. The paramedics were called and arrived a short time later. They also found no vital signs. Through discovery limited to the qualified immunity issue, Plaintiffs note that the Lamar County Jail had no written policies in place for the detection and prevention of suicide nor any policies relating to the administration of CPR to detainees who attempted suicide.

## SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of a material question of fact is itself a question of law that the district court must consider before granting summary judgment. *John v. State of La. (Bd. of T. for State Colleges & U.),* 757 F.2d 698, 712 (5th Cir.1985).

At the summary judgment stage, this Court is not to weigh evidence and resolve issues of fact, but instead must determine whether there is a genuine issue for trial. A genuine issue for trial exists if there is sufficient evidence to justify a jury verdict for the non-moving party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be proper. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987). Where "the summary

judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, ... all other contested issues of fact are rendered immaterial." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct at 2552, 106 S.Ct. 2548). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984).

In order to prevail, the moving party must demonstrate the lack of a genuine issue of material fact. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir.1982). "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

Once a properly supported motion for summary judgment is presented, however, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union*

*Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court," (*Topalian* 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting summary judgment." *John*, 757 F.2d at 712, *quoting Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980).

## QUALIFIED IMMUNITY AND THE SUFFICIENCY OF PLAINTIFFS' COMPLAINT

Before exploring the contours of the qualified immunity doctrine, this Court must examine the substance of Plaintiffs' Section 1983 complaint. What the complaint asserts determines how this Court must proceed in its analysis. While Defendants' motions are couched in terms of qualified immunity, Defendants also assert that Plaintiffs' Section 1983 claim itself is insufficient as a matter of law. In other words, this Court has two issues before it—the sufficiency of Plaintiffs' Section 1983 claim and the issue of qualified immunity. While it is necessary to examine the law surrounding Section 1983 to explore the qualified immunity issue, the litigants in this action have jumbled together, in their briefs, several different concepts that must be disentangled to be analyzed. Plaintiffs, in their amended complaint, assert claims under 42 U.S.C. § 1983 and its accompanying provision for attorney's fees, 42 U.S.C. § 1988, as well as a state law wrongful death claim under Miss.Code Ann. § 11–7–13. Defendants' motions address the doctrine of qualified immunity as it pertains to Plaintiffs' Section 1983 claim. Accordingly, this Court's discussion is limited to the issue of qualified immunity as it pertains to Plaintiffs' claim under Section 1983. This Court notes that Defendants have not briefed the issue of qualified immunity regarding Plaintiffs' state law wrongful death claim. This Court also notes that the doctrine of qualified immu-

nity as it relates to a Section 1983 claim is different than the doctrine of qualified immunity as it relates to a claim under Mississippi law.

 The basis for Plaintiffs' constitutional claim is found in Title 42 U.S.C. § 1983 which provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In a lengthy en banc opinion, the Fifth Circuit recently articulated the State's duty to tend to a pretrial detainee posing a risk of suicide. *Hare v. City of Corinth,* 74 F.3d 633 (5th Cir.1996) (en banc). In general, "the State's exercise of its power to hold detainees and prisoners brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being." *Hare,* 74 F.3d at 638–39 (citing *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). The constitutional rights of a convicted prisoner stem from the Eighth Amendment's prohibition on cruel and unusual punishment, while the analogous rights of a pretrial detainee arise under the due process guarantees of the Fourteenth Amendment. *Hare,* 74 F.3d at 639. Through a long line of cases involving both convicted prisoners and pretrial detainees, the Fifth Circuit has fashioned two different standards of care that the State owes to a pretrial detainee. A Section 1983 challenge of a jail official's episodic acts or omissions evokes the application of one standard while a challenge of the general conditions, practices, rules, or restrictions of pretrial confinement evokes another. *Id.* at 643. A jailer's constitutional liability to a pretrial detainee for episodic acts or omissions is measured by

a standard of deliberate indifference. *Id.* "Negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State." *Id.* at 645. Instead, a pretrial detainee must demonstrate that "the official acted or failed to act with deliberate indifference to the detainee's needs." *Id.* at 648; *See also Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Constitutional attacks on general conditions, practices, rules, or restrictions, otherwise known as jail condition cases, are subject to the Bell test which is premised on a reasonable relationship between the condition, practice, rule, or restriction and a legitimate governmental interest. *Id.* at 644. To pass constitutional muster, the challenged jail policy or practice must be reasonably related to a legitimate governmental interest. *Id.* at 642. With these two standards in mind, this Court now turns to the facts of this case.

First, it is apparent that Plaintiffs complain of episodic acts of Sheriff Breazeale, Deputy Perry, and other individuals on the one hand, as well as jail policies, or the lack thereof, and jail conditions on the other hand. This Court must distinguish between the two.

For the Bell test to apply, a jailer's act or omission must implement a rule or restriction or otherwise demonstrate the existence of an identifiable intended condition or practice. If a pretrial detainee is unable to point to such an established rule, then he must show that the jail official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice to which the Bell test can be meaningfully applied.

*Hare,* 74 F.3d at 645.

Deputy Perry's inadvertence in failing to remove Mr. Thornhill's shoes when returning him to his cell is an "episodic act or omission" for Section 1983 purposes. This act in itself did not implement a jail-

house rule or practice. Moreover, through deposition testimony, it is apparent that Deputy Perry had removed Mr. Thornhill's shoes from his reach on at least one prior occasion and that she knew that providing a suicidal detainee with shoelaces was against unwritten jail policy. Further, Plaintiffs have not alleged that the act of giving a detainee shoelaces is pervasive as to be a jail custom. Likewise, Sheriff Breazeale's act of placing Mr. Thornhill in a jail cell with a non-break away shower rod is also an "episodic act or omission" for Section 1983 purposes. This act, by itself, does not implement a rule or jail custom. If anything, Sheriff Breazeale, in an effort to make Mr. Thornhill more comfortable, placed him in that particular cell because it was equipped with a toilet and shower. This can hardly be characterized as deliberate indifference.

■ Plaintiffs argue that Defendants were deliberately indifferent in placing Mr. Thornhill in a jail cell with the instruments of his suicide. Plaintiffs note that the combination of shoelaces and a non-break away shower rod constitute a recipe for death. What Plaintiffs fail to note is that each element of the means of Mr. Thornhill's suicide—the shoelaces and the shower rod—were placed within Mr. Thornhill's reach by two different actors. It is undisputed that Deputy Perry failed to remove Mr. Thornhill's shoes from him upon returning him to his cell. Likewise, it is Sheriff Breazeale who, by admission, had Mr. Thornhill placed in a jail cell with a non-break away shower rod. It is the combination of these two acts, along with Mr. Thornhill's suicidal tendencies, that provided Mr. Thornhill with the means to commit suicide. Taken separately, each act of Defendants was an isolated instance of oversight. As a matter of law, neither of these acts evidence deliberate indifference for Mr. Thornhill's needs.

■ Plaintiffs, however, have challenged numerous jail policies and conditions. Plaintiffs complain that the Lamar County Jail had no written policies in place for the detection and prevention of suicide nor any policies relating to the administration of CPR to detainees who attempted suicide. In addition, Plaintiffs contend that the condition of the cell in which Mr. Thornhill was housed, with its non break away shower rod, was patently unsafe. All of these challenges fall squarely within the class of complaints known as jail conditions cases which are subject to the Bell test. This Court notes in passing that a Section 1983 action against the county may be premised on inadequate police training, *Hood v. Itawamba County*, 819 F.Supp. 556, 561 (N.D.Miss.1993) or the failure to adopt a policy, *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992). In other words, the lack of formal policies may state a valid Section 1983 claim. Under the Bell test, these practices and conditions must be reasonably related to a legitimate governmental interest. At this summary judgment stage of litigation, this Court cannot find that no genuine issue of material fact exists as to whether Lamar County Jail's practices and conditions are reasonably related to a legitimate governmental interest. Accordingly, Plaintiffs' challenge of the jail conditions and practices survive thus far. Having determined that Plaintiffs' Section 1983 complaint is viable, this Court now turns to the doctrine of qualified immunity.

The doctrine of qualified immunity, as anyone who has undertaken a cursory examination of the case law in this Circuit knows, is an area of law that is uncertain and in seemingly constant flux. While complicated by ostensibly conflicting opinions and made more confusing by the parties' briefs, it is instructive to set out a few simple tenets that underlie the structure of the doctrine. To counter the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties and to avoid excessive disruption of government, qualified immunity serves to terminate a claim against a public official as soon as possible in a judicial proceeding, even before discovery. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir.1998) (citations

omitted) (Note that this is the second *Hare* opinion. The first was the en banc opinion defining a State's duty to tend to a pretrial detainee posing a risk of suicide.)

■ A defendant acting in his individual capacity may invoke the doctrine of qualified immunity to shield himself from liability. *Owen v. City of Independence, Missouri,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Often referred to as the qualified immunity defense, the doctrine of qualified immunity is not a defense at all, but is essentially a right not to be sued under certain circumstances. The doctrine of qualified immunity does not insulate from liability a governmental entity or a person acting in his official capacity. *Owen,* 445 U.S. 622, 100 S.Ct. 1398 (1980). It can only protect a person acting under color of law in his individual capacity. A Section 1983 action may be brought against a person in his individual capacity, a person in his official capacity, or against a governmental entity like the county. *Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In this case, Plaintiffs have named as defendants the Sheriff and Deputies in both their individual and official capacities as well as Lamar County. To name a defendant in his official capacity is functionally equivalent to naming the governmental entity, in this case the county, as a defendant. A defendant acting in his official capacity is not immune from suit under the doctrine of qualified immunity. Instead, Plaintiffs proceed against a defendant acting in his official capacity just as they would proceed in a suit against the county. Accordingly, this Court must assess the actions attributable to Sheriff Breazeale and Deputy Perry in their individual capacities.

■ With this in mind, the two part test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident. *Hare,* 135 F.3d at 325. It is well established that the failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under Section 1983 as a violation of the detainee's constitutional rights. *Rhyne v. Henderson County,* 973 F.2d 386, 391 (5th Cir.1992); *Burns v. City of Galveston,* 905 F.2d 100, 103 (5th Cir.1990); *Lewis v. Parish of Terrebonne,* 894 F.2d 142, 146 (5th Cir.1990); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986). Plaintiffs, therefore, have alleged the violation of a clearly established constitutional right and satisfied the first prong of the qualified immunity test.

"The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively reasonable in light of that then clearly established law." *Hare,* 135 F.3d at 326. Plaintiffs mischaracterize the import of this language by asserting that the second *Hare* decision does not apply to this case since it was decided in 1998 after the 1997 incident that gave rise to the present cause of action. It is clear that a pre-trial detainee, at the time of Mr. Thornhill's suicide, had a constitutional right to adequate protection from his known suicidal impulses. *Rhyne v. Henderson County,* 973 F.2d 386, 391 (5th Cir.1992). This Court also notes that the two different standards of care the State owes a pretrial detainee, those announced in the en banc *Hare* decision, were also clearly established in 1997 at the time of Mr. Thornhill's suicide. In other words, the contours of Section 1983 law as it relates to a pre-trial detainee's right to be protected from his own suicidal tendencies was clearly established in 1997, and it is on the basis of that law that this Court must examine the qualified immunity issue. In fact, the *Hare* Court noted

Therefore, the deliberate indifference test enunciated in our 1996 en banc opinion was a clearly established minimum standard of conduct when the incident occurred in 1989. In other words, at the very least, that standard was clearly established as of then. Therefore, it is that standard to which we hold the individual defendants in determining, objectively, the reasonableness of their conduct.

*Hare,* 135 F.3d at 327. The Fifth Circuit enunciate that that code of conduct was established in 1989, and it would be the appropriate standard in this case.

■ The second prong of the qualified immunity test compels this Court to examine the actions attributable to Sheriff Breazeale and Deputy Perry in their individual capacities. Deputy Perry, as previously discussed, failed to remove Mr. Thornhill's shoes from him before returning him to his cell. This is the only act of which Plaintiffs complain that is attributable to Deputy Perry in her individual capacity. Sheriff Breazeale placed Mr. Thornhill in the cell in which he committed suicide—an action attributable to the Sheriff in his individual capacity. This Court notes again that these are the types of acts which are classified as episodic acts or omissions under Section 1983 law. Against the backdrop of the deliberate indifference standard, the clearly established duty of care at the time, the conduct of these actors was not objectively unreasonable. None of the Defendants, acting in their individual capacities, did anything that was objectively unreasonable given that the duty of care they owed Mr. Thornhill was not to be deliberately indifferent to his needs. Just as these actions, as episodic acts or omissions, were not acts of deliberate indifference, they are also of such a nature as not to be objectively unreasonable in light of the duty owed Mr. Thornhill. Accordingly, Sheriff Breazeale and Deputy Perry are immune from Section 1983 liability in their individual capacities under the doctrine of qualified immunity.

■ Plaintiffs next argue that Deputy Perry was performing ministerial functions and, as such, cannot invoke the doctrine of qualified immunity. Under Mississippi qualified immunity law, an official cannot enjoy qualified immunity when performing a ministerial, as opposed to a discretionary function. *Newton v. Black,* 133 F.3d 301 (5th Cir.1998). This Court first notes that Mississippi's qualified immunity doctrine is different than the qualified immunity doctrine for a Section 1983 case such as this one. Second, Deputy Perry did exercise discretion in performing her duties, and, more specifically, in deciding when to take Mr. Thornhill's shoes, where to place them, and when to allow him out of his cell. These are not ministerial acts as contemplated by Mississippi's qualified immunity doctrine.

Finally, Lamar County correctly asserts that it is not responsible for the actions of its employees under the doctrine of respondeat superior. *Rhyne,* 973 F.2d at 392. No such vicarious liability has been asserted by Plaintiffs in this case. The county next argues that, under Mississippi statutory law, it is the Sheriff alone who is responsible for the control and operation of the jail. This does not absolve the county of liability. The Sheriff in his official capacity and the county itself are responsible for prison conditions and practices. As policymakers, both are proper Section 1983 Defendants. *Brown,* 520 U.S. at 403, 117 S.Ct. 1382. A suit against the Sheriff in his official capacity, as a policymaker, is equivalent to a suit against Lamar County. This is not to say that Plaintiffs have demonstrated that the county is liable, but only that Plaintiffs' Section 1983 claim concerning jail practices and conditions is properly brought against the county.

In sum, Plaintiffs' Section 1983 challenge of the Lamar County Jail's conditions and practices survives summary judgment. Plaintiffs' Section 1983 challenge against the Sheriff and Deputies in

their individual capacities fails. This Court expresses no opinion regarding Plaintiffs' state law claims.

IT IS ORDERED AND ADJUDGED that the Plaintiffs' claims against Marvin Breazeale, individually, and Theresa Perry, individually, are hereby dismissed with prejudice. In all other respects the motion for summary judgment is denied.

### *JUDGMENT*

This day this cause came on for hearing before the Court on Defendants' Motion for Summary Judgment, the issues having been duly heard and a decision having been duly rendered by separate Memorandum Opinion and Order;

It is Ordered and Adjudged:

That Plaintiffs' claims against Marvin Breazeale, individually, and Theresa Perry, individually, are hereby dismissed with prejudice.

In all other respects the motion for summary judgment is denied.