Christina Bell **GRAY,** Milton **Bell, Charles C. Bell, Garmillia Ann Bell, Individually and as the Wrongful Death Heirs of Clarence Leon Bell, Deceased, and the Estate of Clarence Leon Bell, by and Through Its Administratrix, Christina Bell Gray,** Plaintiffs,

v.

**TUNICA COUNTY, MISSISSIPPI and Lemuel Glenn Wellington, Individually and in His Official Capacity as a Jailor of Tunica County, Mississippi,** Defendants.

No. 202CV020–PA.

United States District Court, N.D. Mississippi, Eastern Division.

July 2, 2003.

Edward Peacock Connell, Jr., Merkel & Cocke, Nathan J. McMullen, N.J. McMullen, Attorney, Clarksdale, MS, for Plaintiffs.

Daniel J. Griffith, Griffith & Griffith, Cleveland, MS, for Defendants.

### MEMORANDUM OPINION

PEPPER, District Judge.

This cause is before the Court upon Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. The Court, having considered the motion, the responses thereto, and the briefs and authorities cited, is prepared to rule.

This case involves the suicide of Mr. Clarence Leon Bell on April 12, 2001 while a pretrial detainee at the Tunica County Jail.

The plaintiffs, Christina Bell Gray, Milton Bell, Charles C. Bell, Garmillia Ann Bell, all both individually and as the heirs of Clarence Leon Bell, and the estate of Mr. Bell through his administratrix, Christina Bell Gray, filed the instant suit against the defendants Lemuel Glenn Wellington, in his official and individual capacity as a jailor for the Tunica County Sheriff's Department ("TCSD"), and Tunica County, Mississippi under 42 U.S.C. Section 1983 and Mississippi law for damages arising from Mr. Bell's suicide. Essentially, the plaintiffs argue that Tunica County, for their allegedly constitutionally inadequate jail policies, and Jailor Wellington, for his alleged acts and/or omissions, are liable under Section 1983 for violating Mr. Bell's constitutional right to be protected from harm while a pretrial detainee. In addition, the plaintiffs argue that Tunica County is liable under the Mississippi Tort Claims Act for wrongful cremation of Mr. Bell's remains.

The defendants filed a summary judgment motion praying the Court to rule on three issues: (1) Jailor Wellington's immunity from suit in his individual capacity under the doctrine of qualified immunity; (2) Tunica County's immunity from suit under the doctrine of official capacity liability; and (3) Tunica County's immunity from the Mississippi state-law claim regarding wrongful cremation under the law enforcement or inmate exceptions, or both, to the Mississippi Tort Claims Act. *Miss. Code Ann.* § 11–46–1 (1993) *et seq.*

Because this suit involves federal questions, the Court has proper jurisdiction under 28 U.S.C. Section 1331. Furthermore, under usual summary judgment standards the facts are viewed in a light most favorable to the plaintiffs.

After so viewing, the Court rules in favor of the defendants on the first and second issues mentioned above. With respect to the third issue, because the Court dismisses the claims upon which its original jurisdiction was based, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. Section 1367(c)(3). As such, the Court dismisses the same without prejudice and gives leave for the plaintiffs to refile this claim in a State court of competent jurisdiction and venue, without penalty or waiver of any applicable statutes of limitation within ninety (90) days of the date of this opinion and the order therewith.

The Court recognizes the facts material to its summary judgment rulings as follows:

## FACTUAL BACKGROUND

On or about April 12, 2001, officers of the TCSD arrested Mr. Bell at a casino for disturbing the peace at around 5:00 a.m. The officers proceeded to book Mr. Bell into the recently-built Tunica County Jail, at around 6:00 a.m. During the jail's screening and classification process, Mr. Bell confirmed he was neither suicidal nor did he require any medical attention. Mr. Bell appeared to be well-acquainted with jail routine, evincing he was not a novice regarding jail procedures.

After the booking process, during which he was outfitted with a standard orange jail jumpsuit, the jailors placed Mr. Bell in a holding cell. While in the holding cell, Mr. Bell was especially disruptive. The disruptive behavior included: disobeying instructions, ringing the electronic call button repeatedly, banging on the door and walls, hitting his head on the cell, and striking a jailor. As such, the jailors decided to move Mr. Bell to an isolated padded cell, referred to by the jailors as the lunacy cell, which is an eight-by-eight-foot padded cell with no fixtures and a French toilet. Jailor Wellington escorted Mr. Bell to the lunacy cell at around 10:35 a.m. that same day. After placed in the lunacy cell, the jailors instituted a suicide watch upon Mr. Bell.

Around 11:45 a.m., a little over an hour after he placed Mr. Bell in the lunacy cell, Jailor Wellington passed by Mr. Bell's cell and looked through the window. The jailor allegedly observed Mr. Bell in the back corner of the cell in a position resembling a "frog like" posture, most likely hunched over on his knees, nude, and with his back toward the window, but in any event, apparently in no distress. Thereupon Jailor Wellington allegedly called for the jail

nurse, Dockreletta Smith, LPN, to take a look. They both state that they believed Mr. Bell was merely sleeping. As such, Jailor Wellington stated he then decided to feed the other inmates first and return to feed Mr. Bell thereafter.

About thirty minutes later, at around 12:15, Jailor Wellington returned to Mr. Bell's cell to feed him. When he opened the cell he discovered Mr. Bell was lying on the ground in a kneeling position, nude, and not breathing. According to the plaintiffs, no one attempted CPR on Mr. Bell at that moment, nor did anyone summon the on-duty doctor and the only action taken by Jailor Wellington was to cover Mr. Bell with his jumpsuit and await the arrival of the paramedics. When the paramedics arrived, all attempts to revive Mr. Bell failed and he was soon thereafter pronounced dead.

In their Second Amendment Complaint, the plaintiffs assert: (1) wrongful death against the defendants under 42 U.S.C. Section 1983 and the Mississippi Wrongful Death Statute; (2) claims arising from Mr. Bell's estate under section 1983; and (3) negligence under the Mississippi Wrongful Death Statute for claims involving the cremation of Mr. Bell's remains without their permission and for failing to provide Mr. Bell with proper medical attention. With the exception of the state negligence claims involving the wrongful cremation, on September 12, 2002 this Court dismissed the plaintiffs' state claims under the Mississippi Tort Claims Act, *Miss. Code Ann.* §§ 11–46–9(1)(m) and (c) (1997) and § 11–46–7(2) (1993), using the inmate exemption, the law enforcement exemption, and individual immunity provisions contained therein.

Thus, the federal claims of violation of constitutional rights under Section 1983 and the state claim involving wrongful cremation remain.

## LEGAL ANALYSIS

### A. *Summary Judgment*

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id.* Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra*, at 322, 106 S.Ct. 2548.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc., supra*, at 255, 106 S.Ct. 2505. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protective Systems*, 669 F.2d 1026, 1031 (5 Cir.1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir.1969).

Under the provisions of Rule 56(e), Federal Rules of Civil Procedure, a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett, supra*, at 324, 106 S.Ct. 2548. The facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true. However, the moving party must still show that he is entitled to judgment on those facts as a matter of law, and if he fails to discharge that burden he is not entitled to judgment, notwithstanding the apparent absence of a factual issue. 6–Pt. 2, Moore, *Federal Practice (2d Ed.)*, ¶ 56.22[2], p. 56–777.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson, supra* at 248, 106 S.Ct. 2505. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249, 106 S.Ct. 2505. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law.

*Id.,* at 251, 106 S.Ct. 2505. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.,* 574 F.2d 824, 826 (5 Cir.1978); *Schuchart & Associates v. Solo Serve Corp.,* 540 F.Supp. 928, 939 (W.D.Tex.1982).

With respect to the instant case, the Court has viewed the facts in a light most favorable to the plaintiffs. At first glance from the pleadings, the disputed facts are legion. However, the Court concludes that even taking the facts as averred by the plaintiffs in light favorable to them (with the exception of the unsupported allegations of murder discussed below), there are no genuine issues of *material* facts in dispute. That is, taking the facts but not the mere allegations in a light most favorable to the plaintiffs in the instant case yields no quarter to support their Section 1983 claims.

### B. Official Capacity Liability

#### 1. Official Liability Based Upon Jail Policies

The Fifth Circuit has recently confirmed the Supreme Court's maxim that "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). Furthermore, "*Monell* and later decisions reject municipal liability predicated on *respondeat superior,* because the text of section 1983 will not bear such a reading." *Id.* (citing *Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)). Therefore, the Fifth Circuit wrote, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski,* 237 F.3d at 578.

However, liability of a municipality for section 1983 violations can result "if a deprivation of constitutional rights was inflicted pursuant to official customs or policy." *Id.* at 579. Furthermore, "even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.'" *Id.* (citing *Bryan County,* 520 U.S. at 407, 117 S.Ct. at 1389). This deliberate indifference test is a stringent one and "a showing of simple or even heightened negligence will not suffice" to prove municipal liability. *Id.*

But a policy need not be official to trigger municipal liability under section 1983: a custom may also evidence a policy. *Id.* However, in order for an unofficial policy, or custom, to make a municipality potentially liable under 1983, "[a]ctual or constructive knowledge of [the] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir.1984) (en banc).

With respect to Tunica County's liability for constitutionally inadequate jail policies, official or otherwise, these policies must also be viewed with the test enunciated by the Supreme Court in *Bell v. Wolfish* in mind. 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Usually called the *Bell* test, no relation to the current plaintiffs, "under *Bell,* a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare*

*v. City of Corinth,* 74 F.3d 633, 640 (5th Cir.1996) (en banc). Of course, the *Bell* test applies only when a pretrial detainee attacks "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* at 643.

■ The Court concludes that Tunica County is not liable under section 1983 for violating Mr. Bell's constitutional rights with allegedly inadequate jail policies or customs, official or otherwise, because neither caused Mr. Bell's death under both the *Bell* and *Monell* tests. The policies or customs instituted by the Tunica County Jail as put into practice with Mr. Bell pass muster under the *Bell* test because they were certainly reasonably related to a legitimate government purpose—that purpose being to reasonably protect inmates from harm.

Furthermore, the Court concludes that the plaintiffs fail to provide sufficient facts, rather than mere allegations, that the jail policies or customs as applied to Mr. Bell violate the Supreme Court's test in *Monell* because the plaintiffs fail on at least two of *Monell*'s three elements required for circumventing the presumption against municipal liability. As to the first element requiring a policy maker, the relevant policy maker in this case was Sheriff Jerry Ellington who was dropped as a defendant with the plaintiffs' Second Amended Complaint. There is no evidence in the record that it is within Jailor Wellington's province to make policies. As to the third element requiring that the official policy or custom be the "moving force" of the constitutional violation—a heightened standard of causation—the plaintiffs fail to show what more could have reasonably been done.

The Court concludes that putting Mr. Bell in the lunacy cell at the Tunica County Jail, even assuming he was viewed as a significant suicide risk, was more than adequate to protect Mr. Bell from harm. The jail itself was at all relevant times practically new. The cell was padded, there were no fixtures from which to tie off any device to effectuate a hanging, and Mr. Bell was given no shoes or shoelaces with which to harm himself. Furthermore, the Court fails to see what more could have been done by Tunica County to prevent this suicide other than continuously watching Mr. Bell. Even had Jailor Wellington gone inside the cell at the point he alleges he saw Mr. Bell lying nude in a peculiar position to check on him, there is no guarantee Mr. Bell would not have committed suicide sometime later under the same conditions.

Significant to the Court's conclusion that Tunica County Jail's policies or lack thereof did not cause Mr. Bell's death is the method by which Mr. Bell committed suicide. Though the details are disputed, it is hardly disputed that such a method was unforeseeable. Mr. Bell did not hang himself from fixtures or anything else. The consensus seems to be that he ripped off a portion of his jumpsuit and managed to strangle himself. That by the position in which he was kneeling, he was able to remain strangled even after he passed out. But again, the precise method is unclear.

Of all the analogous cases the Court reviewed in this determination, all the suicides in those cases were definite, the methods clear. For example, in *Hare,* Ms. Hare ripped a blanket apart and hanged herself from the cell bars. *Hare v. City of Corinth, Miss.,* 135 F.3d 320, 323 (5th Cir. 1998). In *Thornhill v. Breazeale,* Mr. Thornhill hanged himself with his shoestrings from a curtain rod inside his cell. 88 F.Supp.2d 647, 649 (S.D.Miss.2000). In *Jacobs v. West Feliciana Sheriff's Dept.,* Ms. Jacobs hanged herself with a sheet tied from the light fixtures. 228 F.3d 388, 390 (5th Cir.2000)

In the instant case, however, the method is not definite and is indeed peculiar. In fact, the plaintiffs not only argue that the method by which Mr. Bell killed himself is disputed, but also that someone murdered Mr. Bell using excessive force, most likely Jailor Wellington. With respect to this claim, the Court concludes that the plaintiffs have shown no evidence to support this claim. They only provide allegations which under the standards of summary judgment outlined above are clearly inadequate. Thus, the Court dismisses that claim entirely.

The Court opines again that the only additional thing that could have been done to have prevented this tragedy was to have watched Mr. Bell continuously and the Court is certain that such continuous supervision is not required or even practically possible. Mr. Bell's suicide was certainly regretful, especially given Mr. Bell was only in jail for disturbing the peace; however, suicide is, by definition, the act of killing one's self and ultimately involves an individual's own decision.

The Court thus grants the defendants' motion for summary judgment regarding the issue of Tunica County's official liability for its jail conditions or policies that allegedly caused Mr. Bell's death.

### 2. Official Liability Based Upon Jailor's Conduct

■ With respect to the plaintiffs' claim that Tunica County is liable under Section 1983 because Jailer Wellington, in his official capacity, committed acts or omissions which caused Mr. Bell's death, the argument is rejected. As discussed above, Tunica County cannot be held liable via the doctrine of *respondeat superior*. Under the *Monell* and *Bell* tests, Tunica County can only be held liable for Mr. Bell's death if a policy, official or otherwise, was the "moving force" that caused the death or if the jail's policies or customs were not rea-sonably related to a legitimate government interest. Stated differently, since Jailor Wellington was not the policy maker, Tunica County cannot be held liable for its employee's alleged acts or omissions.

Because the Court concludes such, even viewing the facts (but not mere allegations) in a light more favorable to the plaintiffs, it therefore grants summary judgment on this issue and holds that Tunica County is not liable under section 1983 for Mr. Bell's death. Tunica County is therefore dismissed as a defendant.

### C. Qualified Immunity

The next issue relates to the plaintiffs' claim that Jailor Wellington is liable under Section 1983 in his individual capacity for causing Mr. Bell's death by Wellington's acts or omissions. Jailor Wellington has asserted the affirmative defense of qualified immunity.

The doctrine of qualified immunity is founded upon several important policies. Many courts have noted "the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 324 (5th Cir.1998). To bring about this effect, "qualified immunity serves to terminate a claim against a public official as soon as possible in a judicial proceeding, even before discovery." *Id.* Another purpose of the doctrine of qualified immunity is "to spare the defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)). Of course, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1093, 89 L.Ed.2d 271 (1986).

■ The Fifth Circuit's en banc decision in *Hare* is dispositive regarding the issue of qualified immunity in the instant case. The *Bell* test applied above is to be used "only when a pretrial detainee attacks general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 643. However, when "the pretrial detainee's claim is based on a jail official's episodic acts or omissions, the *Bell* test is inapplicable, and hence the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Id.* Again, "[n]egligent conduct by a prison official cannot be the basis for a due process claim." *Id.* at 647. For the conduct to give rise to liability to the official individually, it must "be more than mere or even gross negligence." *Id.* at 645.

*Hare*'s familiar holding states that "the episodic act or omission of a state jail official does not violate a pretrial detainee's due process right to medical care or protection from suicide unless the official acted or failed to act with *subjective deliberate indifference* to the detainee's rights." *Hare*, 74 F.3d at 636 (emphasis added). The correct legal standard "is not whether the jail officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference." *Id.* at 650 (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

The test for qualified immunity is well-settled: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir.1998). With respect to the second element, the clearly established law at the time of the incident on April 12, 2001 was that a jailor cannot be held liable under section 1983 for a pretrial detainee's suicide unless the jailor acted with subjective deliberate indifference.

■ The plaintiffs meet the first element because the Fifth Circuit has held that a pretrial detainee has the constitutional right to be adequately protected from their known suicidal impulses. *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir.1992); *Burns v. City of Galveston*, 905 F.2d 100, 103 (5th Cir.1990); *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir.1990); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1187 (5th Cir.1986); *Thornhill v. Breazeale*, 88 F.Supp.2d 647, 653 (S.D.Miss. 2000).

■ But the plaintiffs fail to meet the second element. They fail to demonstrate sufficient facts that Jailor Wellington acted in an objectively unreasonable manner given his duty enunciated under *Hare* to not act with subjective deliberate indifference—again, a standard far above negligence or even gross negligence. In other words, other than the plaintiffs mere allegations and speculation that Jailor Wellington or perhaps some other unknown person murdered Mr. Bell, the plaintiffs allege that Jailor Wellington acted with subjective deliberate indifference when he saw Mr. Bell lying nude in a peculiar position in his cell and declined to check on him until he fed all of the other inmates— all despite Mr. Bell being on suicide watch. Furthermore, if that is their argument, the Court has been given no reason why plaintiffs have not included Nurse Smith as a defendant along with Jailor Wellington since she shared in Jailor Wellington's decision that Mr. Bell was merely sleeping.

The Fifth Circuit in *Hare* held that the defendants' behavior in that case was not objectively unreasonable when the pretrial detainee, who was detained on charges of forgery and petty larceny and was a

known heavy drug user, hanged herself from the cell bars with a torn blanket that the defendants erroneously believed the detainee was not strong enough to tear. *Hare*, 135 F.3d at 323. The Court in *Thornhill v. Breazeale* held that the individual officers acted objectively reasonable even though the pretrial detainee, who was detained on charges for raping his estranged wife and who was a known suicide risk, was moved to a cell with fixtures from which to hang himself and the deputy forgot to remove Mr. Thornhill's shoes on one occasion which resulted in Mr. Thornhill's suicide. 88 F.Supp.2d at 653.

An example of a finding of objectively *un*reasonable conduct can be seen in the Fifth Circuit's opinion in *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388 (5th Cir.2000). There, the pretrial detainee, Ms. Jacobs, was detained on charges of attempted second-degree murder after shooting her uncle subsequent to her discovery that he allegedly molested her son. *Id.* at 390. The officers in question were aware that she had attempted suicide by putting the barrel of the gun in her mouth but that attempt was thwarted when the weapon jammed. *Id.* The "detox" cell in which the jailors placed her had fixtures from which she could hang herself. *Id.* Not only that, but the Sheriff also personally knew of prior suicides in the very same cell during his tenure there. *Id.* Despite this, the Sheriff agreed to give the detainee a towel and a blanket after her attorney's request but she was instead given only sheet by another officer. *Id.* Some time later, she hanged herself with it. *Id.* The Sheriff's conduct was held objectively unreasonable because he acted with subjective deliberate indifference when he had knowledge of prior suicides in the same cell and provided her the instrumentalities with which she killed herself. *Id.* at 396. Another deputy was also held to have acted objectively unreasonable because he had twenty years of experience, made the decision to put her in the cell, and had notice that the detox cell was "clearly inadequate" for suicide risks. *Id.* at 397. The other deputy was held not to have acted objectively unreasonable since he was a novice and had made none of the decisions. *Id.*

The facts in the instant case are clearly distinguishable. First, the alleged crimes for which the pretrial detainees were so detained in the aforementioned cases were more serious than Mr. Bell's disturbance of the peace. Second, the cells in all three of the aforementioned cases, even the cases holding objectively reasonable conduct, had fixtures from which to hang ones self. What is more, each of those detainees were given instrumentalities with which to hang themselves from those fixtures. The lunacy cell in which Mr. Bell was placed had no fixtures and was padded. Third, the methods of suicide in all three cases discussed above were clearly foreseeable. That is, hanging from a fixture with a rope fashioned with a shoelace or sheet is certainly more foreseeable than the peculiar method by which Mr. Bell effectuated his suicide. Fourth, in the objectively unreasonable case, *Jacobs v. West Feliciana Sheriff's Dept.*, the officers had specific knowledge of prior suicides in that very cell. Here, there is no evidence nor an allegation there has been prior suicides in the new Tunica County Jail.

In conclusion to the issue of qualified immunity, the facts presented in light favorable to the plaintiffs fail to show objective unreasonableness on the part of Jailor Wellington not only under the rules of law delineated above, but also when compared to the factual situations in the aforementioned governing cases. A government official is not required to prove he did not violate a plaintiff's clearly-established constitutional rights, but rather the plaintiff carries the burden to demonstrate that the

official did. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992). The plaintiffs have failed to do so. As such, the Court grants summary judgment to the defendants on Jailor Wellington's qualified immunity claim and dismisses Jailor Wellington as a defendant.

### D. State Claims for Wrongful Cremation

The plaintiffs also claim damages arising from Tunica County's decision to cremate Mr. Bell's remains. They argue that the decision to cremate Mr. Bell, after failing to find his relatives in six days, was improper and gives rise to a claim under the Mississippi Tort Claims Act. Because the claims upon which original jurisdiction with this Court have been dismissed, the Court declines to assert supplemental jurisdiction under 28 U.S.C. Section 1367(c)(3). As such, the Court dismisses the same without prejudice and gives leave for the plaintiffs to refile this claim in a State court of competent jurisdiction and venue, without penalty or waiver of any applicable statutes of limitation within ninety days of this opinion and accompanying order.

### CONCLUSION

Based upon the foregoing, the Court hereby finds that the defendants' motion for summary judgment should be granted in part and denied in part. An order will issue accordingly, **THIS** day of July 2, 2003.